UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs.  ) | DOCKET NO.  14-cr-64 -JDL |
| ) | |
| PAUL HENRY ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**Paul Henry** comes before the court for sentencing on April 24, 2015. The plea agreement in this case calls for the statutorily mandated minimum of 180 months. (ECF# 67 at ¶4).  Henry accepts the plea agreement.  There remains one contested Guideline issue. Additionally, Henry asks the court to consider the constitutionality of the 15 year minimum mandatory sentence required by 18 U.S.C. §2251(e).[1]

**Grouping**

The defense objects to the multi-count two-level increase applied by probation in the final PSR. ¶¶16, 33.[2] Probation suggests the two counts do not group under Guideline 3D1.2. We disagree.  At the PSR conference the court asked about any case law on the issue.  A very similar case is *U.S. v. Ortiz-Graulau*, 526 F.3d 16 (1st Cir. 2008).  Mr. Ortiz-Graylau, age 38 had a lengthy consensual sexual relationship with a 14-year-old woman.  Id. 17. They lived together for six months in a relationship that was legal under Puerto Rico law.  Id. Ortiz-

---

[1] Any individual who violates, or attempts or conspires to violate, this section [18 U.S.C. §2251] shall be fined under this title and imprisoned not less than 15 years nor more than 30 years.

[2] While a ruling on this issue may initially seem moot or irrelevant in light of the plea agreement, should there be a retroactive repeal of the minimum mandatory in the future, the court's Guideline findings may become relevant.  This is an issue counsel is confronting in the drug chart reduction cases; what at sentencing is a seemingly irrelevant Guideline issue becomes important due to a Commission or legislative change.

Graylau took many sexually explicit photographs of himself and the young woman over the course of their relationship. He was convicted of both possessing child pornography and sexual exploitation of a child in violation of 18 U.S.C. §2251(a) the same crime at issue in our case. In *Ortiz-Graylau* the counts were grouped. "[T]he applicable guideline range, whose computation Ortiz does not contest, was 180 to 210 months--primarily driven by the grouping rules that combined the two counts as closely related." Id 21. In ruling on the Guidelines in Ortiz-Graylau, the sentencing judge found,

> "Pursuant to U.S. Sentencing Guidelines section 3(D)(l.2)(B), the rules relative to grouping of closely related counts, counts one and two were grouped since the counts involved the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. Pursuant to U.S. Sentencing Guidelines Section 3 ( D)( 1. 3) (A) in the case of counts grouped together pursuant to U.S. Sentencing 3(0) (1.2) (B) the offense level applicable to the group is the offense level determined in accordance with Chapter two and parts A, B and C of Chapter 3 for the most serious of counts comprising the group producing the highest offense level.
>
> Application of guideline provisions to the Continuous (sic) Code 2251 violation produces the highest violation level and is found in Section 2 (G) (2 .1). That section provides that offenses involving sexually exploiting a minor by production of sexually exploitive or printed material has a base offense level of 32. Since the offense involved the commission of a sexual act or sexual contact, a two level increase is warranted pursuant to U.S. Sentencing Guideline Section 2(G) (2.1) (B) (2) (A)." *U.S. v. Ortiz-Graylau*, 05-cr-231-JAG, Sentencing Transcript p. 23, ECF #83 (D. P.R., 3/24/06).

The First Circuit affirmed the conviction and a sentence of 180 months (the minimum mandatory) as to the sexual exploitation count.  Henry's case is a very similar fact pattern. He engaged in and filmed consensual sex with a young woman (age 15) who he had and on and off longer term relationship with.  Guideline §3D1.2(b) requires grouping of counts when, "counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." Id.  In the PSR response to the defense objection to lack of grouping probation argues, "when the acts are committed on different dates, it creates separate instances of fear and harm to the victim." Yet in this case the victim was a girlfriend and  a consensual participant, just as in *Ortiz-Graylau*. Based on the specific facts of this case the two counts should group.  The result is a 2 level reduction in the overall calculation making this a total offense level 35.[3] This has no effect on the current sentence under the plea agreement, but  could be of importance in the future should Congress and the USSC adopt retroactive sentencing changes.

**Eighth Amendment and Constitutional Issue**[4]

Supreme Court decisions require trial courts to exercise discretion to impose sentences, subject to statute, that are reasonable in individual cases. See, e.g., *United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (making guidelines advisory). The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In identifying cruel and unusual punishments, the Supreme Court has not limited itself to "historical conceptions"

---

[3] An offense level 35, history III carries an advisory sentencing range of 210 to 262, still above the 180 month sentence agreed to in the plea agreement.

[4] The defendant recognizes this Court may feel bound by *U.S. v. Polk*, 546 F.3d 74 (1st Cir. 2008) (15-year mandatory minimum for child pornography related offense was not cruel and unusual).  To preserve the issue for any potential future review beyond "plain error" standard, the issue must be raised now.  *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001).

of impermissible sanctions, *Graham v. Florida*, 560 U.S. 48, (2010), but has looked to "the evolving standards of decency that mark the progress of a maturing society," *Kennedy v. Louisiana*, 554 U.S. 407, 419, (2008). A punishment will be deemed "cruel and unusual" not only when it is "inherently barbaric," but also when it is "disproportionate to the crime." *United States v. Reingold*, 731 F.3d 204, 210 (2d Cir. 2013)(internal citations omitted).

The cruelty and injustice of mandatory minimums are widely recognized. In a speech to the American Bar Association, Justice Kennedy noted that he could "accept neither the necessity nor the wisdom of federal mandatory minimum sentences. In too many cases, mandatory minimum sentences are unwise and unjust." Anthony M. Kennedy, Assoc. Justice, Supreme Court of the United States, Address at A.B.A. Annual Meeting (Aug. 9, 2003) (requesting the Association urge Congress to repeal mandatory minimums). There are "at least 171 individual mandatory minimum provisions currently in the federal criminal statutes." Ricardo H. Hinojosa, Chair, United States Sentencing Commission, Statement Before the House Judiciary Committee Subcommittee on Crime, Terrorism, and Homeland Security 2 (June 26, 2007). Defendants facing possible mandatory minimum sentences have few options to negotiate a lower sentence. Yet the triggering of a mandatory minimum sentence hinges to a large degree on the specifics of the charging instrument. Possession of child pornography carries no minimum mandatory. Transportation carries a 5 year minimum mandatory. Production carries a 15 year minimum mandatory. The facts in this case would support any of these charges. The Eighth Amendment's Cruel and Unusual Punishment Clause, prohibits sentences that are grossly disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277, 284 (1983).

In this case, the defendant filmed sexual activity with a girlfriend. She was under age 18. It remains unresolved if Henry knew her true age at the time of the video. See PSR¶¶9, 9A. The Court ruled knowledge of the women's age is not an element of the offense and not

a defense. (ECF# 63). Henry also disseminated a portion of the video to others via Tango.me. Courts which have examined minimum mandatory sentences related to child pornography or sexual exploitation of children have found the sentencing scheme constitutional. *U.S. v. Polk*, 546 F.3d 74 (1st Cir. 2008) (15-year mandatory minimum for child pornography related offense was not cruel and unusual); *United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013)(the statutorily mandated five-year minimum sentence does not constitute cruel and unusual punishment as applied to Reingold).

**Special Conditions of Supervised Release**

The defense objects to proposed conditions of Supervised Release number 1 through 6 as written. See Addendum to revised PSR. When imposing special conditions of supervision, the First Circuit requires the sentencing court "to set forth factual findings" to justify those conditions. *United States v. Perazza-Mercado*, 553 F.3d 65, 75 (1st Cir. 2009). The facts of Paul Henry's case distinguish it from most "sex offender" or child pornography related cases. So too should the court distinguish the conditions of supervision. "Congress intended supervised release to assist individuals in their transition to community life;" therefore, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is primarily concerned with facilitating the reintegration of the defendant into the community.[5] Supervised Release is not designed to be punitive.

Paul Henry has admitted to engaging in and filming himself and the victim during sexual activity. Although she was in fact age 15 at the time, based on the images and the

---

[5] See S. Rep. No. 98-225 at 124 (1983) (explaining that the goal of supervised release is "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release").

5

reports, she presents as far older. She held herself out as being much older on many occasions, including in her advertisements in Backpage. This court has ruled that knowledge of the victims true age is not an element of the offense. Under the specific facts of this case, there is no evidence at all that Paul Henry has a sexual interest in children or is a "sex offender" in need of treatment. Henry was 23 when he met the victim and she indicated according to the PSR that she was 17. PSR ¶9. Henry recalls her saying she was age 19. ¶9A. In either situation, the relationship that developed was consensual and within a range of age appropriate conduct. The forensic examination of Paul Henry's multiple phones and his social media accounts fail to show any evidence at all of a sexual interest in children. He has no history of violent or sexual misconduct with children. He is not a pedophile. This is a factually unique situation in which Henry has been convicted of a strict liability offense which ordinarily involves those with a sexual interest in children. However here that is not the case.

**Proposed Special Condition 1** is over broad and goes well beyond the language approved by the First Circuit in *U.S. v. York*, 357 F.3d 14 (1st Cir. 2004). In *York*, the sentencing court made a specific finding the Defendant required sex offender treatment based on two prior convictions for indecent assaults on minors. The York condition:

> The defendant is to participate in a sex offender specific treatment program at the direction of the Probation Office. The defendant shall be required to submit to periodic polygraph testing *as a means to insure that he is in compliance with the requirements of his therapeutic program*. No violation proceedings will arise based solely on a defendant's failure to "pass" the polygraph. Such an event could, however, generate a separate investigation. When submitting to a polygraph exam, the defendant does not give up his Fifth Amendment rights.

*United States v. York*, 357 F.3d 14, 18 (1st Cir. Mass. 2004)(Emphasis added).

Compare the *York* language with that probation is now proposing:

Defendant shall submit to periodic, random polygraph examinations as directed by the probation officer to assist in treatment, case planning, and/or supervision. No violation proceedings will arise solely on the defendant's failure to pass a polygraph examination, or on the defendant's refusal to answer polygraph questions based on 5th amendment grounds. Such an event could, however, generate a separate investigation. Defendant shall pay/co-pay for such services to the supervising officer's satisfaction.

The *York* condition is specifically designed to "insure that he is in compliance with the requirements of his therapeutic program," a significant restriction to the scope of questioning and a "narrow delegation" of administrative detail. *York* at 22. In contrast, the proposed language allows the use of polygraph testing regarding almost any subject which can be described as fitting into the phrase "treatment, case planning, and/or supervision." It is hard to imagine a topic that a probation officer could not say fits within these boundaries. Restated, probation is asking the court to impose the unheard of condition that Paul Henry submit to polygraph testing about anything his probation officer wants to ask him about. The condition is over broad, overly invasive, lacks precedent, and fails to demonstrate how it assists in the supervised release function.

**Proposed Special Condition 2** is overly broad limiting ALL contact with those under 18 to occurrence at times when Henry is with a person pre-approved by probation. Nothing in Paul Henry's record or in the facts of this case support such a limitation. A reasonable condition would be a prohibition on romantic relationships or sexual contact with anyone under the

age of 18.  Limiting Henry's contact with all children because he had a relationship with a physically mature and sexually active young woman is overly broad and punitive.

**Proposed Condition** 3, while appropriate in many cases, is not applicable here.  Although Henry used the internet (Tango.me app) to send the video, the purpose was not to spread (or obtain) child pornography.  Henry did not know that what he was sending was "child pornography."

**Proposed Conditions 4 and 5** are unnecessary because Henry does not need sex offender counseling.  He did not know he was committing a sex offense.  He is not interested in sex with children.  He is not interested in child pornography.  To the extent the court determines that some level of counseling is appropriate, then the court should limit use of polygraph testing to that which accompanies sex offender treatment (i.e. a therapeutic program, as in *York*).  The search condition is redundant of proposed condition 9.  There is no explanation for why there should be both proposed conditions 4 and 9.

**Proposed Condition 6** is inapplicable as there is no financial loss, no restitution and no reason related to the case for a financial disclosure requirement in this case.


DATE: April 20, 2015                            /s/ David Beneman
                                                David Beneman
                                                Attorney for Paul Henry


David Beneman, Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

8

## CERTIFICATE OF SERVICE

    I, **David Beneman**, attorney for **Paul Henry**, hereby certify that I have served, electronically, a copy of the above **"DEFENDANT'S SENTENCING MEMORANDUM"** upon **Julia Lipez**, Assistant United States Attorney, United States Attorney's Office, Portland, ME via the ECF system.

                                                /s/ David Beneman
                                                David Beneman

DATE: April 20, 2015